FILED

2021 Aug-18  AM 09:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| JIMMY W. EDWARDS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  6:20-cv-00715-HNJ |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

Plaintiff Jimmy W. Edwards seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding his claim for a period of disability and disability insurance benefits.  The court has carefully considered the record, and for the reasons stated below, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.

in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at §§ 404.1520(c), 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.00-114.02. *Id.* at §§ 404.1520(d), 416.920(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20

C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii), 404.1525, 416.925.  That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment.  *See Williams v. Astrue*, 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work.  *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled.  *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work.  20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant can perform other work, the evaluator will not find the claimant disabled.  *See id.* §§ 404.1520(a)(4)(v),

416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant cannot perform other work, the evaluator will find the claimant disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(g), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'"  *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).  The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.  *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted).  Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Mr. Edwards, age 56 at the time of the ALJ hearing, protectively filed an application for a period of disability and disability insurance benefits on July 29, 2016, alleging disability as of January 30, 2015. (Tr. 81, 248). The Commissioner denied his claims, and Edwards timely filed a request for hearing on March 3, 2017. (Tr. 90–91). An Administrative Law Judge ("ALJ") held a hearing on May 9, 2019. (Tr. 32–52). The ALJ issued an opinion on June 11, 2019, denying Edwards's claim. (Tr. 14–27).

Applying the five-step sequential process, the ALJ found at step one that Edwards did not engage in substantial gainful activity during the period January 30, 2015, his alleged disability onset date, to September 30, 2015, his date last insured. (Tr. 19). At step two, the ALJ found Edwards bore the severe impairments of status post right knee laceration with tendon involvement, obesity, and major depressive disorder. (*Id.*) At step three, the ALJ found that Edwards's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Next, the ALJ found that Edwards exhibited the residual functional capacity ("RFC") to perform light work, except he could only occasionally climb ramps or stairs, and he could never climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, and crouch, and he could never kneel or crawl. In addition, Edwards could not sustain concentrated exposure to temperature extremes or vibration, and he could not sustain any exposure to hazardous machinery or unprotected heights. Finally, he could

understand, remember, and execute simple tasks; maintain attention and concentration for two-hour periods; adapt to routine and infrequent workplace changes; make simple, work-related decisions; maintain occasional interaction with the general public and frequent interaction with coworkers; and perform jobs that do not require a production rate or pace.  (Tr. 22)

At step four, the ALJ determined Edwards did not retain the ability to perform his past relevant work as a truck driver or press person.  (Tr. 25).  At step five, the ALJ determined a significant number of jobs exited in the national economy which Edwards could perform.  (*Id.*)  Accordingly, the ALJ determined that Edwards has not suffered a disability, as defined by the Social Security Act, during the period January 30, 2015, to September 30, 2015.  (Tr. 26).

Edwards timely requested review of the ALJ's decision.  (Tr. 242–47).  On March 24, 2020, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision.  (Tr. 1–3).  On May 20, 2020, Edwards filed his complaint with the court seeking review of the ALJ's decision.  (Doc. 1).

## ANALYSIS

Edwards contends the ALJ's decision does not rest upon substantial evidence because the ALJ improperly discredited his subjective complaints of pain and, in turn, misapplied the pain standard.  Contrary to Edwards's contention, however, the court finds substantial evidence demonstrates the ALJ properly applied the pain standard and relied upon objective medical evidence to discredit his allegations of pain.

> To establish disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."

*Zuba-Ingram v. Comm'r of Soc. Sec.*, 600 F. App'x 650, 656 (11th Cir. 2015) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)).  A claimant's testimony coupled with evidence that meets this standard suffice "to support a finding of disability."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

Social Security Ruling ("SSR") 16-3p, effective March 28, 2016, eliminates the use of the term "credibility" as it relates to assessing the claimant's complaints of pain and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file."  SSR 16-3p, 2016 WL 1119029, *7 (Mar. 16, 2016).  An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning functional limitations and restrictions due to symptoms.  *See* 20 C.F.R. §§ 404.1529(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by

the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." 2016 WL 1119020 at *9; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

Edwards testified during the administrative hearing that diabetes, stress, and chronic obstructive pulmonary disease rendered him unable to work. (Tr. 37). He stated his coughing caused him to "black out" and "see[] spots." (*Id.*) Edwards also reported experiencing lightheadedness and dizziness. (*Id.*) However, after he commenced taking blood pressure, cholesterol, and antidepressant medications, Edwards no longer blacked out. (Tr. 38). Blood sugar medication improved his lightheadedness and dizziness "a little." (Tr. 39). Further, antidepressant medication "helped out" his stress, though it caused him to feel "loopy." (Tr. 42). In addition, Edwards testified he underwent surgery for a 2014 knee injury. (Tr. 45). Around the time of his surgery, Edwards could stand for roughly thirty minutes at a time. (*Id.*) He also remained bedridden and ambulated with an assistive device for a period after the surgery. (*Id.*)

In his Function Report, Edwards stated that pain and leg cramps interfered with his sleep. (Tr. 217). He could dress slowly if seated, and he could shave if seated. (*Id.*) He could not sit to bathe, and he could not stand for a long period in a shower. (*Id.*) Edwards did not sustain any limitations regarding his ability to care for his hair, feed himself, or use a toilet. (*Id.*) He required reminders to maintain his personal hygiene

due to depression.  (Tr. 218).  He also required reminders to take medicine.  (*Id.*)

Edwards reported his spouse cared for their dog.  (Tr. 217).  He prepared sandwiches daily and mowed yards every two weeks.  (Tr. 218).  He required reminders to mow.  (*Id.*)  He spent time outside two to three times weekly, and he could drive and go out alone.  (Tr. 219).  He could not pay bills due to memory lapses, though he could count change, handle a savings account, and use checks or money orders.  (*Id.*)  His hobbies included watching television, which he did "all day."  (Tr. 220).  He visited his mother weekly, but otherwise "stay[ed] at home all the time."  (Tr. 220–21).  Edwards indicated he lacked a social life and did not engage in "activities."  (Tr. 221).

Further, Edwards reported his impairments affected his ability to lift, squat, bend, stand, walk, kneel, hear, climb stairs, remember, and concentrate.  (*Id.*)  Edwards elaborated he could lift only ten pounds, and he experienced difficulty rising from a squatting position.  (*Id.*)  Bending hurt his back, and he could not stand "long periods of time."  (*Id.*)  He could walk fifty to seventy-five yards before requiring fifteen minutes of rest.  (*Id.*)  Edwards stated he could pay attention for fifteen to twenty minutes, and he indicated he does not complete tasks.  (*Id.*)  He did not follow written or spoken instructions well.  (*Id.*)  He could get along with authority figures well, though he did not handle stress well.  (Tr. 222).  He indicated he handled changes in routine "somewhat ok."  (*Id.*)  He reporting exhibiting unusual behavior or fear by "not wanting to go outside."  (*Id.*)

In her Third Party Function Report, Edwards's mother indicated she visited

9

Edwards weekly. (Tr. 208). Ms. Edwards indicated that Edwards and his spouse cared for their dog. (Tr. 209). She stated Edwards slept "a lot due to depression," and "his personal hygiene [was] not like it use[d] to be." (*Id.*) She indicated that "most days" Edwards did not bathe, shave, or "dress well," and he required reminders to maintain his personal hygiene. (Tr. 209–10). Edwards also required reminders to take medication. (Tr. 210). He remained capable of mowing, though he required reminders to do so. (*Id.*) He could drive and go out alone, and his spouse engaged in all necessary shopping. (Tr. 211).

Ms. Edwards further indicated that Edwards could count change; however, based upon his lack of education, he could not pay bills, handle a savings account, or use checks or money orders. (Tr. 211). He watched television and "hardly ever" left his home. (Tr. 212). Ms. Edwards reported that Edwards's "bad knees and back hinder[ed]" his ability to lift, squat, bend, stand, walk, kneel, and climb stairs. (Tr. 213). She further indicated his depression limited his ability to concentrate and understand. (*Id.*) Ms. Edwards estimated Edwards could pay attention for thirty minutes, and he "sometimes" completed tasks. (*Id.*) In addition, Edwards could not follow any oral instructions at times, though "sometimes" he could follow oral instructions "ok." (*Id.*) Ms. Edwards stated that Edwards did not handle stress or changes in routine well. (Tr. 214). She had not observed him exhibit any unusual behavior or fears. (*Id.*)

In her opinion, the ALJ accurately summarized Edwards's Function Report and

Ms. Edwards's Third Party Function Report.[2]  (Tr. 22–23).  The ALJ satisfied the

Eleventh Circuit pain standard by stating that Edwards's medically determinable

impairments could reasonably be expected to produce some of the symptoms he

alleged, but Edwards's statements concerning the intensity, persistence, and limiting

effects of his symptoms did not accord with the medical evidence of record and other

evidence.  (Tr. 23).  The ALJ detailed Edwards's pertinent medical evidence[3] to support

her decision, highlighting records indicating that Edwards manifested largely

unremarkable symptoms during the relevant period.  (Tr. 23–24).  The ALJ further

noted the absence of medical evidence portraying the status of Edwards's impairments

---

[2] Edwards describes the ALJ's summary of his Function Report and Mrs. Edwards's Third Party Function Report as "true and correct."  (Doc. 12 at 4).  The ALJ did not explicitly reference Edwards's hearing testimony in her opinion.  Nonetheless, the ALJ's opinion states she "considered all [of Edwards's] symptoms" based upon 20 C.F.R. 404.1529 and SSR 16-3p, (tr. 22), and, as Edwards acknowledges, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision…is not a broad rejection which is not enough to enable [a reviewing court] to conclude the ALJ considered [the claimant's] medical condition as a whole."  (Doc. 12 at 8) (alterations in original) (quoting *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).  For the reasons discussed herein, the ALJ's opinion reasonably portrays she considered Edwards's condition as a whole.  Accordingly, any error arising from the ALJ's failure to summarize Edwards's hearing testimony manifests harmlessly, particularly as Edwards does not raise any issue vis-à-vis the same.  *See id.* at 11 (Edwards contends substantial evidence does not support the ALJ's pain assessment because she "did not consider all of [his] medical records when reaching her decision and she minimized the objective evidence in the medical record that support [his pain] allegations."); *see also Nance-Goble v. Saul*, No. 4:20-cv-00369-CLM, 2021 U.S. Dist. LEXIS 109944, at *8–11 (N.D. Ala. June 11, 2021) (Although the ALJ did not specifically mention the claimant's relevant hearing testimony, he stated he considered "*all* [her] symptoms" based upon § 404.1529, and, therewith, did not improperly omit reference to the claimant's testimony.) (emphasis in original).

Finally, because Edwards challenges the ALJ's pain assessment only, the court will assess solely the evidence vis-à-vis Edwards's knee pain and obesity.

[3] The period January 30, 2015, Edwards's alleged onset date, to September 30, 2015, his date last insured, constitutes the pertinent period in this case.  Thus, as elaborated more fully below, Edwards's medical records postdating this period bear no relevance to the disability determination.

or demonstrating that he sustained disabling pain during the pertinent period. (*Id.*) The ALJ adequately articulated her findings and supported them with substantial evidence.

Edwards sustained a right knee laceration on December 28, 2014, following an all-terrain vehicle accident. (Tr. 275). The same day, Edwards underwent an emergency laceration repair at Walker Baptist Medical Center ("Walker"), and he "tolerated the procedure well with no immediate complications." (Tr. 297–302). Aside from right knee pain, which Edwards scored at 9/10, Edwards exhibited no musculoskeletal abnormalities upon examination. (Tr. 272, 276). Walker discharged Edwards later that evening. (Tr. 309).

Edwards returned to Walker on December 31, 2014, where Dr. Jeffrey Steven Cuomo diagnosed Edwards with a "[t]raumatic right knee laceration with a longitudinal laceration of the quadriceps tendon." (Tr. 351). Dr. Cuomo performed a right knee irrigation/debridement and a quadriceps tendon repair. (Tr. 358). Dr. Cuomo noted the procedure "went well without any complications," and Edwards "progressed well" in the "hospital course" and his physical therapy. (Tr. 320). Upon examination, Edwards exhibited no swelling in his extremities, and no musculoskeletal abnormalities apart from right knee pain. (Tr. 356). Dr. Cuomo discharged Edwards on January 1, 2015. (Tr. 320).

Edwards presented at a follow-up appointment with Dr. Cuomo's nurse practitioner on January 19, 2015. (Tr. 364). Edwards reported he had fared "very well" since his December 31, 2014, procedure, and he "[d]enie[d] a significant amount of

pain." (*Id.*) The nurse practitioner advised Edwards to wear a knee brace; remain "guarded" while flexing and bearing weight upon his knee; and return in four weeks for a "repeat evaluation." (*Id.*)

The record portrays Edwards did not seek medical treatment again until he attended a November 9, 2015, appointment at Capstone Cottage ("Capstone"). (Tr. 377). Edwards presented at Capstone with complaints of high blood pressure, and chronic knee pain and swelling. (*Id.*) Upon examination, however, Edwards's knee did not exhibit swelling.[4] (*Id.*) Further, Edwards reported his "[p]hysical disability [did] not affect [his] ability to work," and he remained "self-reliant in usual daily activities." (Tr. 378).

As the foregoing review depicts, the record comprises minimal pertinent evidence illuminating the status of Edwards's knee impairment, as it portrays he did not seek medical treatment during the relevant period January 30, 2015, to September 30, 2015. Further, as discussed previously, Edwards denied significant knee pain on January 19, 2015, only eleven days prior to his alleged onset date. Likewise, on November 9, 2015 – just over one month after his date last insured – Edwards reported his physical impairments did not hinder his ability to work or engage in daily activities. Thus, substantial evidence buttresses the ALJ's conclusion that "the pertinent medical evidence of record, including [Edwards's] treatment notes, does not report the presence

---

[4] The treatment record simply reads "[n]o soft tissue swelling," and thus does not indicate whether Edwards did not manifest swelling in his right knee, left knee, or both knees. (Tr. 377).

of any persistently serious or disabling symptoms or limitations" during the relevant period.  (Tr. 24); *see Castle v. Colvin*, 557 F. App'x 849, 853 (11ᵗʰ Cir. 2014) (Substantial evidence buttressed the ALJ's RFC assessment because "[d]uring the relevant time period . . . , [the claimant] did not once visit a physician for his alleged knee pain."); *Slaten v. Saul*, No. 1:20-00253-N, 2021 U.S. Dist. LEXIS 113503, at *17–18 (S.D. Ala. June 17, 2021) ("[T]he lack of any treatment records for [the claimant's impairment] from on or prior to the date last insured, coupled with [claimant's] own denial of any significant [symptoms during the pertinent period], is substantial evidence supporting the ALJ's decision that [the claimant's impairment], while 'severe' for purposes of Step Two, did not produce disabling limitations on or before the date last insured, as is required for [disability insurance benefits]."); *Meredith v. Astrue*, No. 5:09cv372/RH/MD, 2011 U.S. Dist. LEXIS 52734, at *20 (N.D. Fla. Jan. 24, 2011) (The ALJ properly concluded the claimant's "sporadic medical care" undermined her pain allegations.).

In addition, the ALJ properly evaluated Edwards's obesity when formulating his RFC.  SSR 19-2p, effective May 20, 2019,[5] provides the ALJ must consider "the effect obesity has upon the person's ability to perform routine movement and necessary

---

[5] SSR 19-2p applies to "applications filed on or after [May 20, 2019,] and to claims that are pending on and after [May 20, 2019.]"  SSR 19-2p, 2019 WL 2374244, at *5 n.14 (May 20, 2019).  Edwards's claim remained pending on May 20, 2019, as the ALJ did not issue her decision until June 11, 2019.  Thus, the ALJ properly invoked SSR 19-2p.  *See Michael O. v. Comm'r of Soc. Sec.*, No. C20-6161 RSM, 2021 U.S. Dist. LEXIS 125459, at *8 (W.D. Wash. July 6, 2021) (SSR 19-2p applied to the plaintiff's claim, filed in April 2018, because the ALJ did not issue a decision until January 2020).

physical activity within the work environment." SSR 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). The ALJ determined Edwards's obesity "likely . . . contributes to his complaints of pain and discomfort," though the record did not contain any evidence indicating his obesity, "even in combination with his other impairments," renders him disabled. (Tr. 24). In addition, the ALJ noted light work "would minimize the effect of [Edwards's] obesity on his joints and associated body systems." (*Id.*)

Substantial evidence supports the ALJ's application of SSR 19-2p. As elaborated previously, the records from Walker and Dr. Cuomo depict Edwards did not exhibit any musculoskeletal abnormalities apart from his right knee laceration, and he reported no significant right knee pain in January 2015. Moreover, although Edwards complained of chronic knee pain and swelling during his November 2015 Capstone appointment, he did not exhibit swelling upon examination. In addition, Edwards reported his "[p]hysical disability [did] not affect [his] ability to work," and he remained "self-reliant in usual daily activities." (Tr. 378). Nevertheless, the ALJ precluded Edwards from kneeling and crawling, and she limited him to only occasional balancing, stooping, crouching, and ramp and stair climbing. (Tr. 22). Thus, the ALJ's assessment of Edwards's obesity does not manifest as improper, and substantial evidence buttresses the ALJ's RFC determination. *See Kendel S. v. Comm'r of Soc. Sec.*, No. C20-5800-MAT, 2021 U.S. Dist. LEXIS 150250, at *7–8 (W.D. Wash. Aug. 10, 2021) (the ALJ properly applied SSR 19-2p in assessing the claimant's RFC because the ALJ limited the claimant to medium work, despite the claimant's normal physical examination findings and lack

of evidence depicting he sustained functional limitations).

In sum, the ALJ offered adequate explanations for discounting Edwards's testimony as to his pain.  Further, the ALJ properly cited objective medical evidence refuting the severity of the alleged symptoms, and Edwards has not offered any argument or pointed to any facts undermining the substantial evidence supporting the ALJ's residual functional capacity assessment.  Although Edwards maintains his pain limits him to a greater degree than the ALJ assessed, the court cannot reweigh the evidence or second-guess the ALJ's conclusions.  *See Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted).  Thus, the ALJ did not err in assessing Edwards's pain allegations.  *See Castle*, 557 F. App'x at 853 ("With regards to [the claimant's] subjective testimony of pain and other symptoms, it is true that [he] may have suffered from knee problems and obesity, but the record is devoid of any objective medical evidence confirming the severity of the alleged pain.").

Edwards contends the ALJ improperly "ignored" the radiology and physical examinations Dr. E.L. Mollohan conducted on December 14, 2016.  (Doc. 12 at 11).  Based upon radiological imagining of Edwards's knees and spine, Dr. Mollohan concluded Edwards exhibited mild osteoarthritis, and a high riding patella with an incongruent patella-femoral joint in his right knee; [6] mild to moderate osteoarthritis,

---

[6] A "high riding patella," or a "patella alta," refers to "a positional fault defined . . . as the superior displacement of the patella within the trochlear groove of the femur." https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3961060/ (last visited August 16, 2021).  Patella alta "often" accompanies "patellofemoral instability and pain."  Samuel R. Ward et al., *Patella Alta: Association with Patellofemoral Alignment and Changes in Contact Area During Weight-Bearing*, 89-A J. BONE

and a moderate high riding patella with an incongruent patella-femoral joint in his left knee; moderate osteoarthritis in his lumbar spine; moderate L4-L5 disc space narrowing; and severe L5-S1 disc space narrowing.  (Tr. 383–84, 394).

During Mr. Mollohan's physical examination, Edwards complained of lumbar radiculopathy, cervical pain, and bilateral knee pain.  (Tr. 386).  Dr. Mollohan noted Edwards's "clinical exam findings were consistent with [his] complaints."  (Tr. 385).  However, Dr. Mollohan observed that Edwards did not exhibit cervical pain upon performing cervical or bilateral shoulder range-of-motion maneuvers.  (*Id.*)  Edwards "also related no lumbar radicular pain, neurological symptoms[,] or musculoskeletal . . . complaints with any of the exam testing maneuvers."  (*Id.*)  Edwards "exhibited an antalgic gait secondary to diffuse right knee pain while walking 120 feet," though he did not use an ambulatory device during the examination.  (*Id.*)  He "could sit and/or stand for at least 30 minutes without complaints during the exam," and he did not exhibit any muscle atrophy in his extremities.  (*Id.*)   He raised and lowered himself from the examination table without difficulty.  (*Id.*)

The ALJ did not specifically reference Dr. Mollohan's records, though she noted that "medical opinions" rendered after September 30, 2015, "relate to the time in which they [were] given and do not specifically relate back to the pertinent period at issue." (Tr. 25).  The ALJ did not err in failing to expressly discuss Dr. Mollohan's examination

---

& JOINT SURGERY 1749, 1749 (2007).

notes.

A claimant seeking disability insurance benefits must demonstrate he sustains a disability on or before his date last insured.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("For [disability insurance benefits] claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.") (citing 42 U.S.C. § 423(a)(1)(A)).  Thus, a claimant who develops a disability after his date last insured may nevertheless fail to establish an entitlement to disability insurance benefits for the pertinent period.  *See Burden v. Barnhart*, 223 F. Supp. 2d 1263, 1268 (M.D. Fla. 2002) ("If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability."); SSR 74-8c, 1974 WL 11141, at *2 (Jan. 1, 1974) ("Evidence of an impairment which came into existence or reached disabling severity after the expiration of plaintiff's insured status cannot be the basis for a finding of disability.").

Consistent with these principles, records postdating the claimant's date last insured stand chronologically relevant only to the extent they reasonably portray the severity of the claimant's impairments during the pertinent period.  *See Anderson v. Schweiker*, 651 F.2d 306, 310 n.3 (5th Cir. 1981) ("Because the examination that served as a basis for [the physician's] report took place after [the claimant's] insured status had ended, [the] report is relevant only for the light it sheds, if any, on [the claimant's]

condition as it existed [during the pertinent period].");[7] *Henderson v. Berryhill*, No. CV417-225, 2019 U.S. Dist. LEXIS 40764, at *7 n.3 (S.D. Ga. Jan. 22, 2019) ("Post-date last insured records have little bearing on the disability determination unless [the claimant] demonstrates that the post-date evidence relates back to her condition prior to the expiration of her insured status. . . . In other words, only evidence directly bearing on [the claimant's] pre-expiration medically determinable impairments . . . should be considered."); *Grantham v. Colvin*, No. CV 312-046, 2013 U.S. Dist. LEXIS 101494, at *10 (S.D. Ga. June 25, 2013) ("[E]vidence, including opinion evidence from a treating physician, which occurs after the relevant time period and does not describe the claimant's condition during that period is properly rejected as irrelevant."); *Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 U.S. Dist. LEXIS 37851, at *11 (M.D. Fla. May 8, 2008) ("Evidence post-dating an individual's insured status may be relevant and properly considered if it bears 'upon the severity of the claimant's condition before the expiration of his or her insured status.'") (quoting *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984)).

Accordingly, records arising after the expiration of the claimant's insured status bear no relevance to the ALJ's disability assessment if they merely depict the claimant's then-existing condition. *See Adamo v. Comm'r of Soc. Sec.*, 365 F. App'x 209, 213 (11th Cir. 2010) (the ALJ properly rejected a physician's opinion rendered after the claimant's date

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions decided prior to October 1, 1981.

last insured and predicated solely upon the claimant's then-existing symptoms); *accord McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 691 (11th Cir. 2020).

No reversible error manifests from the ALJ's failure to expressly consider Dr. Mollohan's examination notes because, as the ALJ indicated, they "do not specifically relate back to the pertinent period at issue." (Tr. 25); *see Colclough v. Saul*, No. 3:19-cv-70-WC, 2020 U.S. Dist. LEXIS 13574, at *45 (M.D. Ala. July 31, 2020) (the ALJ bore no duty to address a medical source statement rendered after the claimant's date last insured); *Shannon v. Berryhill*, No. CV417-041, 2019 U.S. Dist. LEXIS 16528, at *12 (S.D. Ga. Feb. 1, 2019) (The court opined that because the ALJ bore no duty to specifically reference each piece of evidence in the record, "the fact that the ALJ did not specifically mention each opinion that was rendered post-date last insured [did] not require a remand on that ground."); *Sutton v. Acting Comm'r of the Soc. Sec. Admin.*, No. 3:16-cv-886-J-MCR, 2017 U.S. Dist. LEXIS 223725, at *19 (M.D. Fla. Aug. 29, 2017) (even if the ALJ erred by failing to consider records postdating the claimant's date last insured, any such error remained harmless because the records did not relate to the pertinent period).

First, Dr. Mollohan's radiological findings vis-à-vis Edwards's back do not illuminate the status of his allegedly disabling condition during the period January 30, 2015, to September 30, 2015, because the record lacks any evidence that Edwards sustained back impairments during this time. To be sure, Edwards stated in his Function Report that bending engendered back pain. (Tr. 221). However, Edwards

did not indicate he experienced back symptoms during his hearing, and the records from Walker, Dr. Cuomo, and Capstone fail to depict any abnormalities regarding Edwards's back.  Further, the ALJ did not determine that Edwards sustained a severe back impairment, and Edwards does not challenge this finding.  The lack of any evidence depicting Edwards sustained a back impairment during the pertinent period thus renders irrelevant Dr. Mollohan's December 2016 findings regarding the same.  *See Henderson*, 2019 U.S. Dist. LEXIS 40764, at *7 n.3 (the claimant failed to establish the relevance of treatment records that postdated her date last insured and did not pertain to her medically determinable impairments); *Angle v. Colvin*, No. 4:13-CV-738-RDP, 2016 U.S. Dist. LEXIS 103932, at *40 (N.D. Ala. Aug. 8, 2016) ("An impairment that occurs after disability insurance has expired is insufficient to warrant eligibility for disability.").

Edwards similarly fails to establish the relevance of Dr. Mollohan's findings vis-à-vis his knees.  Edwards emphasizes the abnormal results of his knee imaging; however, he does not explain how Dr. Mollohan's December 2016 detection of osteoarthritis, or high riding patellas with incongruent patella-femoral joints, pertains to the severity of Edwards's knee pain during the period January 30, 2015, to September 30, 2015.  (Tr. 383, 394).  Notably, Dr. Cuomo's treatment notes do not reference the presence of such knee impairments, and Edwards does not highlight any evidence indicating such impairments beset him (or even existed) during the pertinent period.  To the contrary, the afore-discussed medical evidence depicts Edwards's knee pain

emanated from his December 2014 right knee laceration.  Furthermore, Dr. Mollohan did not indicate his radiological findings bore any connection to Edwards's right knee laceration as it manifested during the pertinent period.  *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 833 (11th Cir. 2011) (The ALJ properly concluded the physician's RFC assessment stood irrelevant because it postdated the claimant's date last insured and "it did not specify that it pertained to [the claimant's] condition during the disability period.").

Thus, the results of Edwards's knee imaging reasonably depict his knee symptomology only as of his December 2016 examination, and, concomitantly, bear no chronological relevance to the ALJ's disability assessment.  *See Elliott v. Comm'r of Soc. Sec.*, No. 2:17-cv-476-FtM-MRM, 2018 U.S. Dist. LEXIS 160828, at *18–19 (M.D. Fla. Sept. 20, 2018) (The claimant failed to establish the relevance of evidence postdating his date last insured because "[a]ll of the cited medical records [were] dated nearly two years or more after [the claimant's] date last insured and [he] fail[ed] to show that these records [were] tethered to symptoms or impairments that [he] suffered during the relevant period."); *Ward*, 2008 U.S. Dist. LEXIS 37851, *10–13 (medical records postdating the claimant's date last insured did not relate back to the pertinent period because they merely depicted the status of the claimant's then-existing symptoms); *Calhoun v. Astrue*, No. 1:07cv871-TFM, 2008 U.S. Dist. LEXIS 66531, at *14 (M.D. Ala. Aug. 29, 2008) (the ALJ properly did not consider records postdating the claimant's

date last insured because they did not portray the continuity of the claimant's impairments and merely documented her current condition).

Likewise, although Dr. Mollohan noted that Edwards exhibited "an antalgic gait secondary to diffuse right knee pain," Edwards fails to demonstrate his December 2016 gait abnormality bears upon the severity of his knee impairment during the pertinent period. Rather, Dr. Mollohan's finding reasonably depicts the severity of Edwards's knee pain only as of December 2016. Accordingly, to the extent Edwards's abnormal gait depicts a deterioration of his knee impairment, it nevertheless fails to portray the severity thereof during the period January 30, 2015, to September 30, 2015.[8] The ALJ thus did not improperly disregard Dr. Mollohan's December 2016 records, and Edwards fails to demonstrate the ALJ's decision does not rest upon substantial evidence.[9] *See Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979) (substantial evidence demonstrated the claimant did not sustain a disability during the pertinent

---

[8] Moreover, despite Edwards's antalgic gait, Dr. Mollohan observed that Edwards sat and/or stood for at least thirty minutes without complaining; raised and lowered himself from the examination table without difficulty; and did not exhibit any muscle atrophy in his extremities. (Tr. 385). Thus, even assuming Dr. Mollohan's December 2016 examination reasonably depicted the severity of Edwards's condition during the pertinent period, the foregoing findings would nevertheless constitute substantial evidence buttressing the ALJ's pain assessment. *See Shannon v. Berryhill*, No. CV417-041, 2018 U.S. Dist. LEXIS 220596, at *8 n.6 (S.D. Ga. Feb. 2, 2018) (The ALJ did not err in disregarding medical evidence postdating the claimant's date last insured; and, in any event, the evidence failed to "demonstrate functional limitations beyond those already incorporated into the ALJ's RFC assessment *during the relevant period*.") (emphasis in original), *report and recommendation adopted in pertinent part in Shannon v. Berryhill*, No. CV417-041, 2019 U.S. Dist. LEXIS 16528 (S.D. Ga. Feb. 1, 2019).

[9] The record also contains Capstone treatment notes from the period February 2016 to June 2018, (tr. 370–74, 404–14), which the ALJ did not expressly reference in her decision. However, Edwards does not raise any issue regarding these records; thus, the court will not assess the same.

period, despite medical evidence portraying his condition deteriorated thereafter); *Slaten*, 2021 U.S. Dist. LEXIS 113503, at *22 ("To the extent the medical opinions supported disabling limitations after the date last insured, any error the ALJ made in considering them is harmless."); *Holcombe v. Berryhill*, No. CA 16-0566-MU, 2017 U.S. Dist. LEXIS 146156, at *40–42 (S.D. Ala. Sept. 11, 2017) (although evidence postdating the claimant's date last insured depicted an increased severity of her impairments, based upon the sparse, temporally relevant medical records and the claimant's daily living activities, substantial evidence buttressed the ALJ's RFC assessment); *Douglas v. Astrue*, No. 1:10-cv-8-MP-GRJ, 2011 U.S. Dist. LEXIS 117283, at *38 (N.D. Fla. June 9, 2011) (the claimant's medical evidence postdating his date last insured remained irrelevant because it did not bear upon the severity of his impairments during the pertinent period).

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision.

**DONE** this 18th day of August, 2021.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE